# UNITED STATES DISTRICT COURT
for the

District of Minnesota

UNITED STATES OF AMERICA

v.

Case No. 15mj95 (SER)

HAMZA AHMED

## CRIMINAL COMPLAINT

I, the undersigned complainant, being duly sworn, state the following is true and correct to the best of my knowledge and belief. On or about November 9, 2014, in Hennepin County, in the State and District of Minnesota, defendant(s)

made false statements

in violation of Title 18, United States Code, Section(s) 1001.

I further state that I am a(n) Special Agent and that this complaint is based on the following facts:

SEE ATTACHED AFFIDAVIT

Continued on the attached sheet and made a part hereof: ☒Yes ☐ No

*Complainant's signature*

Daniel Higgins, Special Agent, FBI
*Printed name and title*

Sworn to before me and signed in my presence.

Date: 4 Feb 2015

*Judge's signature*

City and state: St. Paul, MN

The Honorable Steven E. Rau, U.S. Magistrate Judge
*Printed name and title*

SCANNED
FEB 04 2015
U.S. DISTRICT COURT ST. PAUL

UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA
District Court File No. 15-MJ-___95(SER)___

| | |
|---|---|
| UNITED STATES OF AMERICA, ) | |
| ) | |
| Plaintiff, ) | **AFFIDAVIT IN SUPPORT OF A** |
| ) | **CRIMINAL COMPLAINT AND** |
| vs. ) | **ARREST WARRANT** |
| ) | |
| HAMZA AHMED, ) | |
| ) | |
| Defendant. ) | |

I, Daniel P. Higgins, being first duly sworn, hereby depose and state as follows:

STATE OF MINNESOTA )
                               ) SS:
COUNTY OF RAMSEY )

## I.   INTRODUCTION AND AGENT BACKGROUND

1.  I am a Special Agent with the Federal Bureau of Investigation ("FBI") and have been employed by the FBI since October 2010. I am currently assigned to the Joint Terrorism Task Force ("JTTF") of the FBI's Minneapolis Division. That has been my assignment since March of 2011. As part of my duties as a Special Agent, I investigate, among other things, criminal violations relating to terrorism, such as material support to designated foreign terrorist organizations. The statements contained in this affidavit are based on information I have learned through my own investigation; my background, training, and experience as a Special Agent assigned to the JTTF; the investigation of

other FBI special agents and law enforcement officers; records and other evidence obtained during the course of this investigation; and discussions with individuals as set forth in this affidavit.

2. This affidavit is intended to show merely that there is probable cause to believe that the defendant HAMZA AHMED, a 19 year-old United States citizen, has committed a federal crime. It does not set forth all of my knowledge about this matter.

## II. PURPOSE OF THE AFFIDAVIT

3. I make this affidavit in support of an application for a criminal complaint charging the defendant HAMZA AHMED ("AHMED") with Making False Statements, in violation of Title 18, United States Code § 1001. Based on my training and experience and the facts as set forth in this affidavit, there is probable cause to believe that AHMED committed this offense. This affidavit is also made in support of an application for a warrant to arrest defendant AHMED.

## III. FACTS CONSTITUTING PROBABLE CAUSE

4. The FBI is investigating numerous individuals who have traveled or are attempting to travel to Syria in order to join a foreign terrorist organization.

5. On or about November 8, 2014, I learned that four individuals from Minnesota were scheduled to leave the United States from John F. Kennedy International Airport ("JFK") in New York, New York later that day. Subsequent investigation revealed that AHMED was among these four individuals. All four of these individuals –

AHMED, H.M.M., M.F., and Z.A. -- are males between the ages of 19 and 20 and are known to reside in the Twin Cities.

6. AHMED and M.F. were booked on the same flight departing JFK to Istanbul, Turkey.[1] From Istanbul, their itineraries deviated: AHMED was ticketed from Istanbul to Madrid, Spain, while M.F. was ticketed from Istanbul to Sofia, Bulgaria. Z.A. and H.M.M. were both scheduled to fly from JFK to Athens, Greece via Moscow, Russia.

7. Officials at JFK prevented Z.A., M.F., and H.M.M. from boarding their respective flights. However, by the time agents had identified AHMED, he had already boarded his flight. Because his flight had not left the gate, Customs and Border Protection Agents were able to board the flight and escort AHMED from the flight. FBI Agents in New York then interviewed AHMED. In a non-custodial interview, AHMED offered the following information:

> a. AHMED told agents he was traveling alone. He stated that he saw someone that he recognized on the Greyhound bus from Minneapolis but did not know him by name. When asked if he knew by name either M.F. or H.M.M., he denied knowing either. When shown a photograph of M.F., AHMED confirmed that the person in the photograph was the individual he

---

[1] Your affiant knows Turkey to be a country foreign fighters frequently utilize as a gateway to enter Syria. Indeed, I am aware that individuals previously have traveled from Minnesota to Turkey in order to engage in fighting in Syria on behalf of ISIS, a designated Foreign Terrorist Organization.

recognized from the bus to New York City. When shown a photograph of H.M.M., he told the agents he did not know this person.

 b. AHMED insisted he was flying by himself and was using his own money to fund his travel.

 c. When shown a photo of H.A.M. (a person known to have traveled to Syria in early 2014), AHMED stated he knew this individual from Burnsville High School. AHMED told agents he had heard rumors from his mosque that H.A.M. had traveled to Syria.

8. After concluding the interview in New York, AHMED and the three other individuals took a bus back to the Twin Cities.[2] When AHMED arrived in Minneapolis on the evening of November 9, 2014, he was met by FBI agents who then conducted a second interview. At the outset of this interview, AHMED was cautioned that the agents were conducting a terrorism investigation and that it is a federal crime to lie to federal agents. AHMED was told he could terminate the interview and was free to leave at any time. AHMED agreed to speak with agents and offered the following information:

 a. AHMED traveled to New York City from Minnesota by Greyhound bus alone and that he planned to vacation in Madrid for four (4) days[3] by

---

[2] Z.A. got off the bus in Chicago but returned to Minneapolis within several days.

[3] Flight information provided to agents show that AHMED was scheduled to return from Madrid, Spain on November 11, 2014. Accounting for flight time between Istanbul and Madrid, this itinerary would have allowed AHMED only one full day in Madrid.

himself. AHMED told agents he had not booked a hotel room in Madrid nor did he know anyone in Madrid.

b. Agents questioned AHMED about his itinerary to Istanbul and then on to Spain. AHMED told agents the reason he departed from JFK rather than Minneapolis was that he believed it was less expensive to do so. By way of explanation, AHMED stated he paid about $200 for the Greyhound bus ticket from Minneapolis to JFK and $800 for the JFK-Madrid plane ticket. When AHMED was asked about the price of flying directly from Minneapolis to Madrid, he told agents he thought it was "a lot more" and had heard "it was like a thousand" or "up to $1,200."[4]

c. Agents showed AHMED a series of photographs and asked if he knew the individuals depicted. When shown a photograph of M.F., AHMED acknowledged that M.F. was on his bus from Minneapolis to New York City and that they had briefly spoken while on the bus but AHMED denied that they were traveling together.

d. At the end of the interview, AHMED stated, "the truth is I really don't know these people" in reference to the three other JFK travelers.

9. AHMED was shown a photograph of H.A.M. AHMED told agents that he recognized H.A.M. "vaguely" from Burnsville High School and knew only his first name.

---

[4] Records show that AHMED used a credit card to purchase his Greyhound ticket ($230) and his plane ticket ($821.30).

AHMED told agents that he had heard rumors that H.A.M. had left Minnesota for Syria. A subsequent review of AHMED's publicly available Twitter account shows a lengthy series of messages between AHMED and H.A.M. taking place between November of 2013 and March of 2014. The exchanges include one in December of 2013 wherein H.A.M. tells AHMED "I love you for the sake of Allah akh." In reply, AHMED tells H.A.M. "Lol my bro I love you." The two also discuss meeting each other at "the masjid" (a mosque), and needing to talk "somewhere that ain't hot."

10. As noted above, AHMED denied traveling with M.F. Agents have reviewed footage of AHMED's activities at the Minneapolis bus station prior to his departure to New York and have noted the following:

   a. Video footage from outside of the bus station shows AHMED and M.F. arriving at the station together in a vehicle driven by a third party;

   b. AHMED and M.F. then walk together with their luggage into the Greyhound station and proceed to check in together;

   c. After completing check-in, AHMED and M.F. return to the waiting area and sit together at a table for approximately 30 minutes;

   d. When boarding begins, AHMED and M.F. line up together and simultaneously board the bus;

   e. After approximately 10 minutes, both AHMED and M.F. get off the bus together to place luggage in the cargo area of the bus, and then get back on the bus which then departs for New York City.

11. Your affiant has reviewed the transaction records of AHMED's and the three other travelers' Greyhound bus ticket purchases. Based upon information provided, your affiant knows that all four individuals (AHMED, M.F., Z.A., and H.M.M.) purchased their bus tickets within a 16-hour timeframe between November 5th and 6th and specifically, AHMED's and M.F.'s purchases occurred within 25 minutes of each other. Further, both AHMED and M.F. used Greyhound's mobile website, and both online purchases resolved to the same IP (internet protocol) address. Your affiant knows that using the same IP address within such a close timeframe means that AHMED and M.F. likely used either the same computer or the same mobile device to purchase their Greyhound bus tickets for the trip from Minneapolis to New York City.

_____

## CONCLUSION

12.  Based on the foregoing, I respectfully submit to this Court that there is evidence amounting at least to probable cause to believe that AHMED has committed the federal crime specified above in this affidavit, and that the nature of this crime, and AHMED's attempted international travel, further supports the issuance of a warrant by this court for the arrest of Hamza AHMED.

Respectfully submitted,

DANIEL P. HIGGINS
Special Agent
Federal Bureau of Investigation

Subscribed and sworn to before
me on this 4 day of February, 2015.

United States Magistrate Judge