1                    UNITED STATES DISTRICT COURT

2                       DISTRICT OF MINNESOTA

3

4      ----------------------------------------------------------

5                                )
       United States of America,  )  Case No. 15-CR-49(MJD/FLN)
6                                )
                Plaintiff,        )
7                                )
          vs.                     )  St. Paul, Minnesota
8                                )  February 9, 2015
       Hamza Naj Ahmed,           )  10:27 a.m.
9                                )
                Defendant.        )
10     ----------------------------------------------------------

11                  BEFORE **THE HONORABLE STEVEN E. RAU**

12          UNITED STATES DISTRICT COURT MAGISTRATE JUDGE

13                        **DETENTION HEARING**

14
       APPEARANCES:

15
       For the Plaintiff:        United States Attorney's Office
16                               ANDREW R. WINTER, AUSA
                                 JOHN F. DOCHERTY, AUSA
17                               300 South 4th Street
                                 Suite 600
18                               Minneapolis, Minnesota 55415

19     For the Defendant:        Murray Law LLC
                                 JANEANNE MURRAY, ESQ.
20                               220 South 6th Street
                                 Suite 1225
21                               Minneapolis, Minnesota 55402

22                               (DEFENDANT PRESENT.)

23     **DIGITAL RECORDING TRANSCRIBED BY:**

24     Official Court Reporter:  JEANNE M. ANDERSON, RMR-RPR
                                 Suite 146 U.S. Courthouse
25                               316 North Robert Street
                                 St. Paul, Minnesota 55101

1            **P R O C E E D I N G S**

2              **IN OPEN COURT**

3            THE COURT:  Good morning, everyone.  We are here

4    for a preliminary hearing and detention hearing on the

5    matter entitled United States of America versus Hamza Ahmed,

6    Case No. 15-mj-95.

7            Would counsel note their appearances starting with

8    the Government?

9            MR. WINTER:  Good morning, Your Honor.  Andrew

10   Winter and John Docherty appearing on behalf of the United

11   States.

12           THE COURT:  Good morning, gentlemen.

13           MS. MURRAY:  Good morning, Your Honor, JaneAnne

14   Murray for Mr. Ahmed.

15           THE COURT:  I'm sorry, Jane --

16           MS. MURRAY:  JaneAnne Murray.

17           THE COURT:  M-u-r-r-a-y?

18           MS. MURRAY:  Correct.

19           THE COURT:  Okay.  The first matter is, Ms.

20   Murray, are you continuing to contest probable cause?

21           MS. MURRAY:  No, Your Honor.

22           THE COURT:  You are waiving the probable cause

23   hearing?

24           MS. MURRAY:  Correct.

25           THE COURT:  Okay.  Mr. Winter and Mr. Docherty,

1      what is the Government's position with respect to its Motion

2      For Detention?

3                  MR. WINTER:  Well, Your Honor, the Government

4      persists in its Motion For Detention in this case.  If the

5      Court wants to hear formal argument, I am prepared to do

6      that.  But, obviously, we are going to rely on the rather

7      detailed Pretrial Services Report that has been prepared.

8      And I am certainly going to answer any questions the Court

9      might have.

10                  THE COURT:  I have also read that, as well, Mr.

11     Winter.  And it would be my understanding that your

12     principal argument here relates to both a risk of flight, as

13     well as safety to the community.

14                  And it is the Government's position that given

15     some of the tweets that Mr. Ahmed has tweeted, that Mr.

16     Ahmed is willing to martyr himself; and that therefore, that

17     creates a danger to the community.

18                  MR. WINTER:  That is exactly correct, Your Honor.

19     And that, obviously, in conjunction with his actual attempt

20     to travel overseas, erasing the phone contacts, indicating

21     he would not need them overseas, all done surreptitiously

22     without his parents' knowledge.  All of these facts together

23     suggest that the circumstances surrounding the case are

24     extraordinarily serious and represent, extraordinarily, a

25     potential for danger.  And that is what is required.

1          And also, the risk of flight for those same

2     reasons, he presents a significant risk of flight.  He did

3     all of those things quite capably and got as far as being on

4     an airplane and was stopped.  So, for all of those reasons

5     we feel both prongs are satisfied, Your Honor.

6          THE COURT:  Thank you, Mr. Winter.  Ms. Murray,

7     will you be calling any witnesses, ma'am?

8          MS. MURRAY:  Not at this time, Your Honor.

9          Your Honor, first of all, I want to point out that

10    this is not a presumption case.  Mr. Ahmed is charged with

11    making a false statement to a federal agent.  There would be

12    a presumption of release, typically, in a case like this.

13         He has strong community support here represented

14    by several people in the audience, and most significantly

15    his mother and his father, both of whom are long-time

16    residents of Minnesota, came here twenty years ago.

17         I think the suggestion in the Pretrial Services

18    Report that somehow my client has ties outside of the United

19    States are -- is a really tenuous and speculative

20    suggestion.

21         His parents are indeed from Somalia and Ethiopia,

22    but they are naturalized U.S. citizens living here in

23    Minnesota for twenty years.  His mother, Fathia, works at

24    Sam's Club, in bakery.  And she has been working at Sam's

25    Club for about 12 years with a small hiatus, recently.  And

1      she makes approximately $15,000 a year.

2              His father, Naji Abraham works for an express

3      delivery company that delivers medical supplies to a nursing

4      home.  He makes $36,000 a year.  Neither of them have ever

5      been in trouble with the criminal justice system before, and

6      they are both here willing to sign a bond on their son's

7      behalf.

8              Mr. Ahmed, himself, has also significant ties to

9      the United States.  He is a United States citizen and he is

10     enrolled in nursing college at MCTC right now where he was

11     attending classes.

12             And significantly, Your Honor, he was detained in

13     November and removed from the plane at JFK, questioned

14     thereafter, put on a Greyhound bus, and questioned when he

15     arrived back in Minnesota after that Greyhound trip, and

16     questioned several times since then by the FBI.

17             And in each of these encounters, Your Honor, he

18     has not ended up fleeing the country, well aware that the

19     FBI and the Government was now interested in him, and the

20     nature of their interest.

21             The FBI has also questioned his mother, his

22     father.  So, it's not like he wasn't aware that there was a

23     serious government interest in him, and yet he did not flee.

24     I think that is one of the most significant statements,

25     here, about his lack of a risk of flight.

1            With respect to the danger to the community, Your

2     Honor, I would submit to you that relying solely on

3     statements put out on social media, statements that are

4     often driven by hubris and do not necessarily represent a

5     true intent to follow through on the statements made, that

6     that should not be the basis here of a finding of danger to

7     the community.

8            He certainly has not been a danger to the

9     community since November when he was removed from a plane at

10    JFK.  He is enrolled in a college.  His family is here.  And

11    I would also like to point out the significant community

12    support that is here.

13           In particular, Mohamud Noor, Executive Director of

14    the Confederation of Somali Communities, and a former Board

15    member of the Minneapolis Public Schools, he is present and

16    willing to put his support and credibility behind the family

17    and behind Mr. Ahmed to ensure that Mr. Ahmed will not be

18    either a risk of flight or a danger to the community.

19           Mr. Ahmed could be released into his family's

20    custody with electronic monitoring, Your Honor, and with

21    strict requirements to attend his classes and other strict

22    requirements to be added to his -- the circumstances of his

23    release to ensure that this young man is not a threat to the

24    community here or the United States, and -- nor a risk of

25    flight.

1           Other individuals in the audience include an

2      individual who is responsible for adult education of the

3      East African Community for the Minneapolis Public School

4      System.  And, Your Honor, the mosque, the elder from the

5      mosque at the Minneapolis Mosque at Cedar-Riverside, Daru

6      Gobu (PH), is also here, the mosque that my client and his

7      family have attended.  And he is also here on behalf of the

8      family and on behalf of Mr. Ahmed.

9           And there are several other individuals in the

10     audience, family, friends, and friends of the Somali

11     community who are here.  So, I think that while the

12     Government's allegations are obviously serious, and I don't

13     wish to diminish them, I think that the concerns going

14     forward as to whether Mr. Ahmed is a risk of flight or a

15     threat to the community can be significantly allayed by

16     stringent bail conditions.  Thank you.

17          THE COURT:  Thank you.  Mr. Winter I have a couple

18     of questions for you, sir.

19          MR. WINTER:  Yes, Your Honor.

20          THE COURT:  Mr. Winter, this is not a rebuttable

21     presumption case.  However, it is the Court's recollection,

22     and maybe you can help me here, that the offense that Mr.

23     Ahmed is charged with, making a false statement, while it is

24     not a rebuttable presumption, there are some exceptions with

25     respect to that when it deals with potential terrorism; is

1     that correct?

2              MR. WINTER:  I don't think it -- it doesn't change

3     the presumption --

4              THE COURT:  It doesn't change the presumption,

5     but --

6              MR. WINTER:  But, what there is is an increased

7     statutory maximum penalty.

8              THE COURT:  Correct.  And what is that statutory

9     maximum?

10             MR. WINTER:  In the case of terrorism, which the

11    Defendant was informed it was, it's an 8-year statutory

12    maximum, rather than a 5-year.  So, he faces significantly a

13    longer prison term as a result of the nature of the

14    allegation.

15             THE COURT:  Correct.  And under the Bail Reform

16    Act, I am to consider the nature and the circumstances of

17    the offense charged, including whether the offense is a

18    crime of violence or an offense listed where there is a

19    certain maximum term.  But, that is 19 years or more.

20             Okay.  Is there anything else you want to advise

21    me of?

22             MR. WINTER:  Yes, I --

23             THE COURT:  Because as you know, the Court -- I am

24    quite troubled by the youth of the Defendant in this case.

25    And the community support gives the Court some degree of

1    solace, but not a lot, given what I have read.

2          MR. WINTER:  And I understand the Court's

3    concerns.  And I would like to just briefly respond to a few

4    of the points made by defense counsel.

5          First of all, in reference to the community and

6    for the parents, they were all in place at the time the

7    Defendant set out on this trip.  And as the tweets indicate,

8    Your Honor, this was something that he was thinking about

9    doing, we know from the tweets, since at least March.  He

10   talked about the difficulty of patience.  And so this is an

11   individual who is thinking about committing a crime.  And he

12   waits and he waits and he waits.  And he waits for his right

13   moment, and then he does it.

14         That kind of lack of impulsivity, I think, bodes

15   poorly for somebody who is going to be released, because --

16   and it also responds in part to this argument that he hasn't

17   done anything bad since he was turned around at JFK

18   International.

19         This is a patient young man who is prepared to die

20   for the cause, according to his own words.  So, this

21   affinity for ISIS, his willingness and his ability to

22   coordinate his travel with three other individuals and then

23   repeatedly lie to the FBI, all of that suggests that the

24   pieces that defense suggests, put in place to assure the

25   Court, is just not enough.

1          It is too risky of a situation to rely on that.

2     And that detention is for now the only answer for this young

3     man.

4          THE COURT:  Thank you.

5          Mr. Ahmed, given what I have read in the bail

6     report, I am going to order that you be detained.  I find

7     that there is no condition or combination of conditions that

8     would ensure that you would appear for court and that would

9     ensure the public's safety.

10         The tweets that you issued were beyond hubris.

11    They were beyond youth.  They were threats.  As a result,

12    you shall remain detained pending this matter being bound

13    over to the Grand Jury.

14         Is there anything further?

15         MR. WINTER:  No thank you.  Nothing from the

16    Government, Your Honor.

17         THE COURT:  We are now in recess.

18         (Adjournment.)

19

20

21

22

23

24

25

1

2                          CERTIFICATE

3

4

5                    The foregoing transcript is a

6       transcription of the digital audio recording that was

7       produced in the above matter by Court staff and later

8       submitted to myself, Jeanne M. Anderson, for transcription.

9       An official court reporter was not present to produce a

10      stenographic and verbatim record of the aforementioned

11      proceeding at the time and place specified herein.

12

13

14

15          Certified by:   s/ Jeanne M. Anderson

16                          Jeanne M. Anderson, RMR-RPR
                            Official Court Reporter
17

18

19

20

21

22

23

24

25