UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA

United States of America,

    Plaintiff,

v.                                    **MEMORANDUM OPINION
                                        AND ORDER**
                                   Crim. No. 15-49 (MJD/FLN)

Hamza Ahmed (01),
Mohamed Abdihamid Farah (02),
Adnan Abdihamid Farah (03),
Abdirahman Yasin Daud (04), and
Guled Ali Omar (07),

    Defendants.

_____

    John Docherty, Andrew Winter and Julie Allyn, Assistant United States Attorneys, Counsel for Plaintiff.

    JaneAnne Murray, Murray Law LLC, Counsel for Defendant Hamza Ahmed.

    Murad M. Mohammad, Murad Defense P.A., Counsel for Defendant Mohamed Farah.

    Kenneth U. Udoibok, Kenneth Ubong Udoibok, P.A., Counsel for Defendant Adnan Farah.

    Bruce D. Nestor, De Leon & Nestor, LLC, Counsel for Defendant Abdirahman Daud.

    Glenn P. Bruder, Mitchell, Bruder & Johnson, Counsel for Defendant Guled Omar.

_____

This matter is before the Court on the following motions: Government's Motion for Inquiry [Doc. No. 384]; Defendant Guled Omar's Motions in Limine [Doc. No. 388]; Defendant Mohamed Farah's Motion to Dismiss the Government's Motion [Doc. No. 389]; Defendant Abdirahman Daud's Motion for Severance [Doc. No. 390]; Defendant Hamza Ahmed's Motion to Exclude or for Severance [Doc. No. 395]; and Defendant Adnan Farah's Motion for Severance [Doc. No. 404].

A.   **Government's Motion for Inquiry/Disqualification of Counsel**

On March 25, 2016, the government notified counsel of record for defendant Mohamed Farah of its intent to introduce testimony and evidence at trial in which a member of Mohamed Farah's defense team, Hassan A. Mohamud, is referenced by a co-conspirator apparently preaching about jihad and related topics.

Specifically, the government has indicated that when a cooperating defendant testifies about how he came to believe that traveling to Syria for jihad was incumbent on him as a religious duty, part of his testimony will be a description of his interaction with an Imam from St. Paul, named Hassan Jami, about the proper way to pray while on the battlefield. In particular, the

government intends to introduce into evidence an audio recording of a phone conversation between the cooperating defendant, a cooperating human source ("CHS") and defendant Guled Omar. During this conversation, the cooperating defendant stated that Sheik Hassan [Jami] told him the method of prayer during jihad. During a later proffer meeting, the cooperating defendant was shown a photograph of Hassan Jami, who he identified as the Imam of the Masjid Dawah mosque in St. Paul and the Sheikh Hassan referenced in the recording. The cooperating defendant clarified that Jami did talk about individuals fighting in jihad and that Jami described how they would pray. The cooperating defendant further stated that Jami would occasionally speak to large groups after prayer at various mosques about various topics.

　　The government has submitted the photograph of the Imam shown to the cooperating defendant and there is no dispute that the person in the photograph is the same individual that is employed as a law clerk with the Nwaneri Law Firm named Hassan A. Mohamud. P. Chinedu Nwaneri is one of the attorneys of record for defendant Mohamed Farah. This defendant is also represented by Murad Mohammed, who is not a part of the Nwaneri Law Firm.

　　The Nwaneri Law Firm website provides that Mohamud graduated from

the Somali National University School of Law in 1986 with an LL.B. degree in Civil Law and Islamic Law, that he obtained a graduate diploma in 1989 in Islamic Law from the Higher Institute for Islamic Studies in Cairo, and that he obtained a JD from William Mitchell College of Law in 2002. Mohamud is not licensed to practice law in the state of Minnesota.

In its motion, the government notes its concern that when the cooperating witness testifies to having learned how to pray in battle from a member of Mohamed Farah's defense team, Mohamud's participation in the defense of defendant Mohamed Farah will create prejudice to this defendant and possibly the other co-defendants at trial. Accordingly, the government asks the Court to determine if there are grounds to disqualify Mohamud from participating in the defense of Mohamed Farah based on a conflict of interest or ethics violations.

### 1. Actual or Potential Conflict

"When an attorney has a conflict of interest, that attorney violates his duty of loyalty to his client and 'fails to provide effective assistance of counsel.'" United States v. Edelmann, 458 F.3d 791, 807 (8th Cir. 2002). Where an attorney has an actual conflict of interest, prejudice is presumed. Id. "An actual conflict occurs 'when, during the course of the representation, the attorney's and the

defendant's interest diverge with respect to a material factual or legal issue or to a course of action.'" Id. (citing United States v. Levy, 25 F.3d 146, 155 (2d Cir. 1994)).

Because the Court has been informed of a potential or actual conflict of interest, the Court has the obligation to determine whether to disqualify Mohamud or whether the defendant will waive any conflict. Id. If the Court determines that there is a severe conflict by Mohamud's presence on Mohamed Farah's defense team - "such that no rational defendant would knowingly and intelligently desire the conflicted [legal adviser's] representation - the court is obligated to disqualify the [legal adviser]." Edelmann, 458 F.3d at 807. The government believes that based on the recent submissions of counsel, the record now establishes that there is a conflict of interest between Mohamud and defendant Mohamed Farah, and that it is no longer an option to simply direct that Mohamud not sit at counsel table or instruct the other lawyers not to mention Mohamud's participation in Mohamed Farah's defense.

In addition to the government's submissions, counsel for co-defendant Zacharia Abdurahman has submitted a declaration on behalf of his client, in which he discusses an encounter between defendant Abdurahman's father and

Sheikh Hassan Jami [Mohamud] the night before Abdurahman entered a plea of guilty before this Court. (Hopeman Decl. ¶ 11.) That night, Sheikh Hassan Jami [Mohamud] called Abdurahman's father, and stated that he was waiting outside his home. (Id.) Jami [Mohamud] had brought with him the father of defendant Adnan Farah. Jami [Mohamud] told Abdurahman's father that he should tell his son not to plead guilty, and that no defendant in the conspiracy should plead guilty. (Id.) Jami [Mohamud] further stated that all of the defendants should stick together and go to trial, and if they did, good things would happen. (Id.)

In response to the government's motion to inquire, defendant Mohamed Farah asserts that, even accepting as true that Mohamud talked about prayer during jihad, such evidence would not create a conflict of interest. Further, there is no evidence before the Court that Mohamud has not been accused of any criminal conduct. Mohamud's statement was only a theological and historical reference to the importance of prayer, even in times of hardship and fear, including war. Further, he asserts that there is no causal connection between these alleged comments and any action that was allegedly taken by any of the co-defendants in this case.

Defendant also argued that the word "jihad" means to exert, create an

exertion of effort, to strive for or to struggle.  It does not refer to an act of violence and criminality.  Further, "holy war" does not appear in the Qur'an.  Defendant emphasizes that nothing that Jami did was different from any theological and historical response to a person asking a theological or historical question.

In response, the government asserts that the Court must consider the conversation at issue in context.  The conversation took place on April 2, 2015, and the defendants in this case, with the exception of Hamza Ahmed, were arrested on April 19, 2015.  Under these circumstances, the statements about prayer during jihad cannot be characterized as theological or historical comments in the abstract.  Instead, the comments demonstrate the mind set of the defendants in the short weeks before their attempted departure to join ISIS.

### 2. Minnesota Rules of Professional Conduct

As indicated above, Hassan A. Mohamud is not a licensed attorney in the state of Minnesota.  Mohamud is employed as a law clerk by Nwaneri, one of counsel of record for Mohamed Farah, thus his conduct may implicate the Minnesota Rules of Professional Conduct 5.3, Responsibilities Regarding Nonlawyer Assistants.  This rule provides that lawyers who employ nonlawyer assistants "shall make reasonable efforts to ensure that the firm has in effect

7

measures giving reasonable assurance that the nonlawyer's conduct is compatible with the professional obligations of the lawyer." It further provides that the lawyer is responsible for the conduct of a nonlawyer that would be a violation of the Rules of Professional Conduct if the lawyer orders or ratifies the conduct or knows of the conduct at a time when its consequences can be avoided or mitigated but fails to take responsibility.

In addition, if any of the defendants in this case would call Mohamud as a witness to rebut any of the cooperating defendant's testimony, Mohamud's testimony would be governed by Minnesota Rule of Professional Conduct 3.7, which provides:

> (a) A lawyer shall not act as advocate at a trial in which the lawyer is likely to be a necessary witness unless:
>     (1) the testimony relates to an uncontested issue;
>     (2) the testimony relates to the nature and value of legal services rendered in the case; or
>     (3) disqualification of the layer would work substantial hardship on the client.
>
> (b) A lawyer may act as an advocate in a trial in which another lawyer in the lawyers' firm is likely to be called as a witness unless precluded from doing so by Rule 1.7 or Rule 1.9.

To be disqualified under this Rule, the attorney's testimony must be necessary. <u>Minnesota v. McLaren</u>, 402 N.W.2d 535, 541 (Minn. 1987).

> Simply to assert that the attorney will be called as a witness, a too-frequent trial tactic, is not enough. If the evidence sought to be elicited from the attorney-witness can be produced in some other effective way, it may be that the attorney is not necessary as a witness. If the lawyer's testimony is merely cumulative, or quite peripheral, or already contained in a document admissible as an exhibit, ordinarily the lawyer is not a necessary witness and need not recuse as trial counsel. In State v. Fratzke, 325 N.W.2d 10 (Minn. 1982), for example, we refused to disqualify the county prosecutor when the defense announced it would be calling the prosecutor as its witness to inquire about an interrogation of the defendant at which the prosecutor was present. We observed two other persons were present at the interrogation who could testify and, further, the interrogation had been taped and transcribed.

Id.

The government asserts it does not believe Hassan Mohamud's testimony would be cumulative or peripheral if he was called as a witness.

The government further asserts that based on the declaration of Jon Hopeman, there is a possible violation of Rule 4.2 of the Rules of Professional Conduct, which provides: "In representing a client, a lawyer shall not communicate about the subject of the representation with a person the lawyer knows to be represented by another lawyer in the matter, unless the lawyer has the consent of the other lawyer or is authorized to do so by law or a court order."

### 3. Motion to Withdraw as Counsel

In response to the government's motion to inquire and the submissions of

counsel, P. Chinedu Nwaneri filed a motion to withdraw as counsel. In his motion, Nwaneri asserts that the issues raised concerning Hassan Mohamud's conduct have detracted him from concentrating solely on Mohamed Farah's defense and that these issues create future uncertainty in this complex criminal matter. As a result, Nwaneri moves to withdraw in order for the parties to focus on the real issues in controversy between the parties.

The Court agrees that the record before it demonstrates sufficient justification to allow Nwaneri to withdraw as counsel, and that Hassan A. Mohamud no longer be involved in the defense of defendant Mohamed Farah. Accordingly, the Court has granted Nwaneri's motion to withdraw. (See Order dated April 1, 2016 [Doc. No. 409].) The issues of whether Nwaneri and/or Hassan Mohamud should be disqualified are now moot.

The Court is also satisfied that defendant Mohamed Farah can continue to be represented by Murad Mohammad, Murad Defense P.A. Mohammad informed the Court that he was hired as lead trial counsel in this matter. He further acknowledged that he was aware that Hassan Mohamud was employed as a law clerk by Nwaneri, and that he is a well-known and respected Imam in the Twin Cities area. As a result, Mohammad cautioned Hassan Mohamud on

several occasions "to be mindful of his duties to our client, even in communication with Mohamed Farah's parents, who's other son Adnan is a co-defendant." (Mohammad Decl. ¶ 7.) Mohammad further denied any knowledge that Hassan Mohamud had any unethical contact with any of the co-defendants.

In response to questions from the Court as to whether Mohamed was prepared to proceed to trial, Mohammad indicated that he had reviewed all of the discovery in this case and felt confident that he could try this case without Nwaneri as co-counsel and that he would be ready to try this case beginning May 9, 2016.

The Court also inquired of defendant Mohamed Farah if he was in agreement that Nwaneri withdraw as counsel and whether he approved of Murad Mohammad's continued involvement as his defense counsel. Defendant Farah indicated that he was fully confident in Mohammad's ability to defend him and that he approved of Nwaneri's motion to withdraw.

Based on the above, the Court finds there are no conflicts of interest or ethical violations that prevent Murad Mohammad from representing defendant Mohamed Farah in this matter.

### B.   Severance and/or Exclusion

In response to the issues raised by the government's motion to inquire, defendants Adnan Farah, Daud, Omar and Ahmed move for severance of their trial from that of co-defendant Mohamed Farah to avoid any prejudice that could result from Hassan Mohamud's continued involvement in this case.  In the alternative, defendants Ahmed and Omar move to exclude any evidence relating to the identity of the Imam that talked about how to pray on the battlefield. These motions are now moot given that Nwaneri and Mohamud are no longer part of defendant Mohamed Farah's legal defense team.

**IT IS HEREBY ORDERED** that:

1. Government's Motion for Inquiry [Doc. No. 384] is dismissed as moot;

2. Defendant Guled Omar's Motions in Limine [Doc. No. 388] are dismissed as moot;

3. Defendant Mohamed Farah's Motion to Dismiss the Government's Motion [Doc. No. 389] is dismissed as moot;

4. Defendant Abdirahman Daud's Motion for Severance [Doc. No. 390] is dismissed as moot;

5. Defendant Hamza Ahmed's Motion to Exclude or for Severance [Doc. No. 395] is dismissed as moot; and

6. Defendant Adnan Farah's Motion for Severance [Doc. No. 404] is dismissed as moot.

Dated: April 5, 2016

s/ Michael J. Davis
Michael J. Davis
United States District Court
