UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA
District Court File No. 15-46 (MJD/FLN)

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | **REPLY BY THE UNITED STATES** |
| | ) | **TO THE JOINT SENTENCING** |
| Plaintiff, | ) | **MEMORANDUM OF DEFENDANTS** |
| | ) | **HAMZA AHMED, ADNAN FARAH,** |
| v. | ) | **ZACHARIA ABDURAHMAN,** |
| | ) | **HANAD MUSSE, AND ABDULLAHI** |
| ABDULLAHI MOHAMUD YUSUF, | ) | **YUSUF** |
| | ) | |
| Defendant. | ) | |

UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA
District Court File No. 15-49 (MJD/FLN)

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| | ) | **REPLY BY THE UNITED STATES** |
| Plaintiff, | ) | **TO THE JOINT SENTENCING** |
| | ) | **MEMORANDUM OF DEFENDANTS** |
| v. | ) | **HAMZA AHMED, ADNAN FARAH,** |
| | ) | **ZACHARIA ABDURAHMAN,** |
| HAMZA AHMED, | ) | **HANAD MUSSE, AND ABDULLAHI** |
| ADNAN FARAH, | ) | **YUSUF** |
| ZACHARIA ABDURAHMAN, and | ) | |
| HANAD MUSSE, | ) | |
| | ) | |
| Defendants. | ) | |

The United States of America, through its attorneys, Andrew M. Luger, United States Attorney for the District of Minnesota, and Assistant United States Attorneys John Docherty, Andrew R. Winter, and Julie E. Allyn, respectfully submits its Reply to the Joint Sentencing Memorandum (Docket No. 703) (hereinafter "Joint Memorandum") of defendants Hamza Ahmed, Adnan Farah, Zacharia Abdurahman, Hanad Musse, and Abdullahi Yusuf (collectively, "defendants").

1

For its substantial length, the Joint Memorandum says little that is directly applicable to this case. This Reply of the government is therefore brief.

The Joint Memorandum has a section on Syria. While there are small inaccuracies here and there in that section – ISIL neither "merged with" nor "took over" Jabhat al-Nusra (Joint Memorandum at pages six and seven); in fact, the two organizations remain in existence, and bitter, violent rivals to this day, *see* Transcript of Testimony of Charles Lister, May 12, 2016, at pages 57 to 59 – on the whole, the government agrees with the chronology and description of the Syrian insurrection set forth in the first part of the Joint Memorandum. In fact, this portion of the Joint Memorandum is almost fully congruent with the trial testimony of the government's trial expert, Charles Lister, and such differences as exist are immaterial.

After this noncontroversial section giving background on Syria, however, the Joint Memorandum departs for a disquisition on Somali life in the United States. No attempt is made to tie the various factual generalizations of this section to the specific facts of the case before the Court. The government neither accepts nor rejects these factual generalizations, in large part because, these broad statements having no demonstrable tie to the lives of *these* defendants, neither the government nor the Court has anything at stake in the truth or falsity of these sweeping claims. Following the section on Somali-American sociology, the Joint Memorandum seeks to explain the fields of adolescent brain development and neuropsychology. It loses its way in the process.

In the neuropsychology section of the Joint Memorandum, Defendants quote the Supreme Court's opinion in *Miller v. Alabama*, 132 S.Ct. 2455, 2458 (2012) for the proposition that children have a "'lack of maturity' and 'underdeveloped sense of

responsibility' [that] leads to recklessness, impulsivity, and heedless risk taking." The Joint Memorandum then engages in an extended discussion of neurology and neurological anatomy, all oriented towards supporting the claim that children and adolescents lack self-control. All of the young men in this case, as the Defendants themselves point out, were over the age of 18 at the time they committed their crimes. None of them were juveniles.

There was nothing impulsive about the crimes of conviction. For more than a year, the defendants met, sometimes as frequently as three times weekly. They discussed the situation in Syria, they planned travel routes, they brain-stormed about ways to raise money for travel, they downloaded secure communications apps to their smartphones, they obtained federal financial aid from educational institutions (a process that requires an applicant to completely fill out a large amount of paperwork), they applied for passports, and they practiced the military arts at a paintball range.

There was nothing impulsive about the defendant's decisions to continue to try and reach Syria despite the FBI's numerous attempts to stop them. When defendant Abdullahi Yusuf was stopped on May 28, 2014, it did not deter the remaining defendants, nor were they dissuaded by defendant Guled Omar being stopped at the airport on November 6, 2014, nor the turn-around of four conspirators at JFK on November 8, 2014, nor the target letters they received, nor the interviews they (and their families) had with FBI Agents. When defendant was arrested in February of 2015, that also did nothing to slow the defendants' ongoing terrorist conspiracy planning.

There was nothing impulsive about the conspiracy's final act, in which defendants Daud and Mohamed Farah drove for two days to get from Minnesota to San Diego, where,

3

they believed, they would meet a person with whom they had negotiated the sale of Daud's automobile in exchange for some cash and some fake passports.

As this Court wrote in *United States v. Robert James Jefferson*, 2015 WL 501968 *5 (D. Minn. Feb. 5, 2015):

> Another factor the courts are directed to consider when sentencing a juvenile is whether the crimes of conviction involved reckless or impulsive behavior due to a lack of maturity. While the criminal conduct at issue here is certainly reckless, the Court finds that such criminal conduct did not involve rash or impulsive behavior. The firebombing of the Coppage home involved planning, the creation of Molotov cocktails and then waiting until dark to set the house on fire. [Defendant] Jefferson had plenty of time to consider what he was doing and the consequences of starting a home on fire. He had plenty of time to back out of the plan, but he did not do so.

The quoted language could be applied directly to this case. The Defendants "had plenty of time to consider what [they] were doing, and the consequences" of their actions.

One other passage in the Joint Memorandum requires comment. At the bottom of page 44, continuing to the top of page 45, the defendants attempt to draw a parallel between ISIL propaganda and the recruiting efforts of the United States Army. The comparison is odious and insulting. More than that, the comparison is really only pointing out that ISIL and the US Army use the same communications mediums to deliver their respective messages. Both use video games and both use glossy magazines. This parallelism in delivery methods proves nothing. People send birthday cards through the mail; other people send anthrax through the mail. This does not make criminals of people who send birthday cards through the mail. And of course, defendants' parallelism ignores the fact that the message being sent via glossy magazines and video games by ISIL depicts war crimes, up to and including murder on an industrial scale. The US Army's message is, to put it mildly, different.

In sum, youthful impulsivity is not an excuse for what these defendants did.

Dated: November 10, 2016                Respectfully Submitted,

                                                       ANDREW M. LUGER
United States Attorney

s/ John Docherty

BY:   JOHN DOCHERTY
Assistant United States Attorney
Attorney Reg. No. 017516X

ANDREW R. WINTER
Assistant United States Attorney
Attorney Reg. No. 232531

JULIE E. ALLYN
Assistant United States Attorney
Attorney Reg. No. 256511